IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SIDNEY EDWARD HUDDLESTON III,

    Movant,

v.                                         Civil Action No. 3:13-cv-21672
                                              (Criminal No. 3:10-cr-00042)

UNITED STATES OF AMERICA,

    Respondent.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255(F)(3). (ECF No. 124). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's Motion be denied and this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

### I.    Background

On January 16, 2009, the Mason County Sheriff's Department obtained a state search warrant for Sidney Edward Huddleston III's ("Huddleston") residence in Apple Grove, WV, based upon information provided by a confidential informant. (ECF No. 80

1

at 15-16).[1] During the search, the police recovered 27 firearms, including pistols, shotguns, and rifles. (ECF No. 56 at 10-11). Deputy Marshal William Seckman of the United States Marshals Service confirmed that the firearms had traveled in interstate commerce prior to being possessed by Huddleston. (ECF No. 80 at 17).

A year later, on January 25, 2010, a task force comprised of members of the United States Marshals Service, the Mason County Sheriff's Department, and the West Virginia State Troopers returned to Huddleston's residence as part of a sex-offender compliance sweep. (*Id.* at 17-18). During the sweep, they observed a firearm in an outbuilding on Huddleston's property. (ECF No. 56 at 12). An incidental search of Huddleston's residence uncovered numerous additional firearms in his possession. (*Id.*). Deputy Marshal Seckman confirmed that those firearms had also traveled in interstate commerce prior to being possessed by Huddleston. (ECF No. 80 at 18).

## II. Procedural History

On January 28, 2010, a federal complaint was filed charging Huddleston with being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (ECF No. 1). That same day, a federal warrant was issued for Huddleston's arrest. (ECF No. 2). On March 3, 2010, a federal grand jury in Charleston returned a three-count indictment and forfeiture against Huddleston. (ECF No. 18). Counts 1 and 3 of the indictment charged Huddleston with being a felon in possession of firearms (18 U.S.C. §§ 922(g)(1) and 924(a)(2)), stemming from the January 2009 and January 2010 searches, respectively. (*Id.* at 3, 6). Count 2 charged Huddleston with knowingly possessing a firearm with an obliterated serial number (18 U.S.C. §§ 922(k) and 924(a)), from the January 2009 search. (*Id.* at 4).

---

[1] Docket numbers refer to the documents filed in the underlying criminal action.

2

### A. *Plea Agreement and Plea Hearing*

On July 14, 2010, Huddleston executed a written agreement with the Government in which he agreed to enter a guilty plea to the first count of the indictment in exchange for dismissal of the other two counts against him. (ECF No. 56). Huddleston's plea agreement contained express waivers of his right to appeal and collaterally attack his guilty plea, conviction, and sentence. (*Id.* at 7-8). Specifically, Huddleston agreed to waive both his right to "appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is below or within the Sentencing Guideline range corresponding to offense level 29," as well as his right to "challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255," aside from claims based upon ineffective assistance of counsel. (*Id.*)

On August 9, 2010, the District Court conducted Huddleston's plea hearing. At the hearing, the Court engaged Huddleston in a thorough Rule 11 colloquy. (ECF No. 80). The Court established Huddleston's competence to enter a guilty plea and his satisfaction with the adequacy of his legal representation. (*Id.* at 4–5). The Court verified that Huddleston understood the plea agreement and appreciated that the stipulation of facts attached to the agreement could be used against him for plea and sentencing purposes. (*Id.* at 9). The Court read and explained the contents of the indictment to Huddleston and reviewed the factual basis for his guilty plea by asking Huddleston to state in his own words what he had done that made him guilty of the

3

possession of firearms charge. (*Id.* at 10–13). Huddleston testified that he had possessed the firearms in his home in Apple Grove, WV, that the firearms "were literally [his] guns," and that he had previously been convicted of the underlying felonies listed in the indictment. (*Id.* at 13). Huddleston's attorney later clarified that Huddleston did not personally own all of the firearms recovered, but nevertheless he admitted to possessing them. (*Id.* at 28). The District Court explained to Huddleston that if he admitted to controlling and possessing firearms that belonged to others, he would still be guilty of committing a crime, and each of the firearms would be added to the total number of firearms possessed for the purpose of determining his sentencing guideline range. (ECF No. 80 at 28). Huddleston acknowledged that he understood the consequences of admitting to possession of all of the firearms. (*Id.*).

At the plea hearing, the Government presented the testimony of Deputy Marshal William Seckman who investigated and arrested Huddleston in conjunction with the West Virginia State Police, the Mason County Sheriff's Department, and the Bureau of Alcohol, Tobacco, Firearms and Explosives. (*Id.* at 13-18). Deputy Marshal Seckman testified that on January 16, 2009, the Mason County Sheriff's Department searched Huddleston's residence pursuant to a state search warrant based upon information provided by a confidential informant. (*Id.* at 15-16). There, they found multiple firearms, including pistols, shotguns, and rifles. (*Id.* at 16). Deputy Marshal Seckman indicated that the firearms had traveled in interstate commerce prior to being possessed by Huddleston. (*Id.* at 17).

According to Deputy Marshal Seckman, on January 25, 2010, he and other law enforcement officers returned to Huddleston's residence as part of a sex offender compliance sweep and, while there, discovered additional firearms in Huddleston's

4

possession. (ECF No. 80 at 17-18). Deputy Marshal Seckman confirmed that these firearms likewise had traveled in interstate commerce prior to being possessed by Huddleston. (*Id.*). Deputy Marshal Seckman testified that Huddleston had previously been convicted of delivery of a controlled substance; a third offense DUI; possession of an unregistered firearm, and aiding and abetting. (*Id.* at 15). Each offense was punishable by imprisonment for a term exceeding one year. (*Id.*). Deputy Marshal Seckman further indicated that Huddleston's right to possess a firearm had never been restored. (*Id.*). At the conclusion of the testimony, the Court asked Huddleston if Deputy Marshal Seckman's testimony was substantially correct, to which Huddleston answered that it was. (*Id.* at 19).

The Court then explained the consequences of Huddleston's guilty plea. (ECF No. 80 at 19–27). The Court went over the sentencing guidelines, their applicability to Huddleston's case, the unavailability of parole, and the binding nature of the guilty plea. (*Id.* at 21-23). Specifically, the Court asked Huddleston if he understood that he had agreed to offense level adjustments under the sentencing guidelines for both "the number of firearms and the fact that some had an obliterated serial number." (*Id.* at 23). Huddleston responded affirmatively. (*Id.*).

Continuing with the plea colloquy, the Court reviewed the terms of Huddleston's plea agreement concerning Huddleston's waiver of appellate and collateral attack rights. (ECF No. 80 at 23-25). The Court advised Huddleston of his right to appeal the conviction based upon an unlawful or involuntary guilty plea or other fundamental defect in the proceedings that Huddleston had not waived by pleading guilty. (*Id.* at 23-24). Huddleston acknowledged that he agreed to waive his right to appeal "any sentence of imprisonment or fine imposed or the manner in which the sentence was determined

on any ground, except for a claim based on ineffective assistance of counsel" so long as his sentence fell within or below the guideline range for an offense level of 29. (*Id.* at 24). Huddleston also conceded that he agreed to waive his right to collaterally attack his guilty plea, the conviction resulting from his plea agreement, and the sentence, aside from claims based upon ineffective assistance of counsel. (*Id.* at 25). Huddleston understood that both waivers were generally enforceable, and that he would have to challenge the validity of the waivers in order to obtain appellate review of an issue he waived. (*Id.* at 24-25).

Finally, the Court questioned Huddleston regarding the voluntary nature of his guilty plea. (ECF No. 80 at 27-28). Huddleston verified that no one had forced, threatened, or talked him into pleading guilty against his will. (*Id.* at 27). He confirmed that in entering his guilty plea, he was acting voluntarily and of his own free will, and that pleading guilty was his own idea. (*Id.*). Consequently, the District Court found Huddleston's guilty plea to be voluntary. (*Id.* at 28). The Court accepted Huddleston's plea and adjudged him guilty of the possession charge. (*Id.* at 28). The Court deferred acceptance of the plea agreement pending completion of a Presentence Investigation Report (PSR), and scheduled sentencing for November 8, 2010. (*Id.* at 29-30).

### B. PSR, Sentencing Hearing, and Appeal

A PSR was prepared prior to sentencing, which reviewed the charge and Huddleston's conviction, the plea agreement and stipulation, the offense conduct, and the facts surrounding Huddleston's arrest. (ECF No. 69). Huddleston's base offense level was calculated to be 20. (*Id.* at 7). A six-level firearm enhancement was added under U.S.S.G. § 2K2.1(b)(1)(C) (offense involving 25-99 firearms), because the offense involved 27 firearms. (*Id.* at 7). Likewise, a four-level firearm enhancement was added

6

under U.S.S.G. § 2K2.1(b)(4)(B) (firearm with an altered or obliterated serial number), because one of the firearms in Huddleston's possession, a Taurus, model .38 Special, .38 caliber pistol, had an obliterated serial number. (*Id.*). Because U.S.S.G. § 2K2.1(b) does not permit the cumulative offense level determined from application of subsections (b)(1) and (b)(4) to exceed 29, Huddleston's offense level was therefore calculated to be 29, rather than 30. (*Id.*). The Probation Officer recommended a three-level decrease for Huddleston's acceptance of responsibility, resulting in an adjusted offense level of 26. (*Id.* at 8).

Huddleston's history of criminal convictions yielded a criminal history score of six, which resulted in a criminal history category of III. (ECF No. 69 at 10). Based on a total offense level of 26 and a criminal history category of III, Huddleston's guideline range of imprisonment was 78-97 months. (*Id.* at 13). Huddleston raised one objection to the final PSR, denying the truth or accuracy of paragraphs 11 and 12 of the presentence report. (*Id.* at 16). Paragraphs 11 and 12 stated that (i) in the course of both searches at Huddleston's residence, law enforcement officers discovered a number of controlled substances including methamphetamine, marijuana and oxycodone; (ii) during the January 2009 search, officers also found a digital scale, $4,800, and a firearm with an obliterated serial number, and (iii) during the January 2010 search, Huddleston admitted to selling the drugs and possessing the weapons. (*Id.* at 4). In response to these objections, the probation officer declined to omit Paragraphs 11 and 12, indicating that their contents were based upon police reports and were relevant "to inform the court of the entire circumstances." (*Id.* at 16).

Sentencing took place on November 5, 2010. (ECF No. 81). Huddleston appeared in person and with counsel. The District Court began by confirming that Huddleston

7

had read the PSR and reviewed it with his attorney. (*Id.* at 3-4). After establishing that Huddleston understood the contents of the PSR, the Court addressed Huddleston's objection to the report. (*Id.* at 4–12). Huddleston reiterated his objection to paragraphs 11 and 12, arguing that they did not describe conduct relevant to any sentencing enhancements, that they were inaccurate with respect to alleged discovery of methamphetamines, and that they contravened the plea agreement because part of the negotiations involved the fact that defense had filed two motions to suppress evidence relating to the searches. (*Id.* at 4-7). The Court noted that paragraphs 11 and 12 were not submitted for the purpose of affecting the offense levels or sentencing guideline range, and that under U.S.S.G. § 1B1.4, accurate information may be included in the presentence report and relied upon to determine a sentence within a guideline range or to support a departure. (*Id.* at 8). The Court proceeded to inquire into the substances and quantities of drugs discovered during each search, to which the Government responded with several exhibits. (*Id.* at 9-13). The Court ultimately denied Huddleston's objection based on forensic laboratory reports showing that a substantial number of different controlled substances were seized from Huddleston's residence during both searches, and some of the substances tested positive for methamphetamine. (ECF No. 81at 13-14). Moreover, Huddleston had made a statement to the police in which he admitted to possessing controlled substances for the purpose of selling them and even provided a list of the prices he charged for marijuana, oxycodone, and other pills. (*Id.* at 14-15). The Court noted that while Huddleston did not explicitly admit to manufacturing or selling methamphetamine, the Government's evidence sufficed to support the factual content of paragraphs 11 and 12. (*Id.* at 15). The Court then adopted the presentence report and accepted the plea agreement. (*Id.* at 16).

The Court confirmed that Huddleston's offense level of 26 and criminal history category of III would yield a guideline range of imprisonment for 78 to 97 months. (*Id.* at 17). Huddleston's counsel subsequently argued for a downward variance based upon Huddleston's advanced age of 63 years, his history of two heart attacks, and exigent family circumstances. (*Id.* at 17-19). The Government opposed a downward departure emphasizing Huddleston's prominence as "one of the main drug distributors of Mason County," as well as his extensive criminal history. (ECF No. 81 at 20). Huddleston's counsel objected to the Government's characterization of Huddleston as "the so-called king of Apple Grove, West Virginia, in terms of drug transactions;" particularly, as he was not charged with any drug trafficking offenses. (*Id.* at 22). Counsel also stressed that the firearms found at Huddleston's residence were not the type usually associated with drug trafficking crimes; instead, they were used primarily for recreational and sporting purposes. Counsel then offered a statement from Mr. Huddleston in which he accepted responsibility for possessing the firearms, but claimed that he had not known that his possession of hunting rifles and recreational firearms was unlawful. (*Id.* at 21-24). The Court denied Huddleston's motion for a downward departure or variance based upon the evidence that Huddleston had been selling drugs[2] and that Huddleston knew or should have known that firearms possession was unlawful. (*Id.* at 25-26). In declining to grant a downward variance, the District Court stated,

> What really disturbs me is that in January of '09 you got searched and arrested for having a bunch of guns and a bunch of drugs, and a year later you're doing exactly the same thing again. And it just strikes me as bizarre to think that if you really cared this much about your family and about your wife and your son's well-being, that you would put yourself in a

---

[2] The Court relied on the forensics reports and Huddleston's own admissions, but specifically discounted the Government's claim that Huddleston was "the biggest drug dealer in Mason County." (ECF No. 81 at 25).

9

> position of having been arrested in January of 2009 for a bunch of guns and drugs, that you would repeat that conduct within a year while those charges were unresolved. That shows I think a staggering disrespect for the law and for your family because what you did is really what put them at risk.
>
> If you hadn't been engaged in all that conduct and this was just charges based on in January of '09 you having a bunch of hunting weapons but no indication of drugs or none of that and you hadn't repeated it a year later, I probably would look hard at a way to keep you from going to prison so that your family wouldn't suffer. But I just can't justify allowing you to have a relaxed sentence when I see conduct like this.

(*Id.* at 25-26). The Court then sentenced Huddleston to a term of imprisonment of 78 months. (*Id.* at 27).

On November 18, 2010, Huddleston filed a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). (ECF No. 74). On March 15, 2011, the Fourth Circuit dismissed Huddleston's appeal on the ground that "Huddleston knowingly and voluntarily waived his right to appeal and that the issue he seeks to raise on appeal falls within the compass of that waiver." (ECF No. 85 at 1-2).

### C. First § 2255 Motion and Appeal

On June 8, 2011, Huddleston filed his first § 2255 Motion, in which he raised four distinct categories of error, including one category dedicated to alleged sentencing errors. (ECF No. 94). On August 29, 2012, the undersigned recommended that Huddleston's motion be denied, and the case be dismissed, for failure to state grounds entitling him to the relief requested. (ECF No. 107). Huddleston filed objections to the recommendation. (ECF No. 110). The presiding District Judge nonetheless adopted the recommendation and dismissed Huddleston's § 2255 proceeding on November 28, 2012. (ECF Nos. 111, 112). Because Huddleston could not meet the governing standard, he was denied a certificate of appealability. (ECF No. 111).

Huddleston filed a Notice of Appeal with the Fourth Circuit on January 2, 2013. (ECF No. 113). On April 30, 2013, the Fourth Circuit issued an Order dismissing Huddleston's appeal after similarly finding that Huddleston had not made the requisite showing to support the issuance of a certificate of appealability. (ECF No. 120 at 2).

### D. Instant § 2255 Motion

Huddleston filed the instant motion on August 9, 2013 pursuant to 28 U.S.C. § 2255(f)(3). (ECF No. 124). He moves the Court to vacate his sentence consistent with the United State Supreme Court's recent decision in *Alleyne v. United States,* 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). (*Id.* at 1). According to Huddleston, "raising his mandatory minimum sentence based on a sentencing judge's finding would violate his Sixth Amendment right to a jury trial." (*Id.* at 4). Huddleston offers no further explanation or factual basis for his motion.

### III. Discussion

Huddleston's § 2255 motion fails for three reasons. First, it is a second and successive motion for which he lacks advanced certification. Second, even if the present motion was Huddleston's first habeas petition, the decision in *Alleyne* does not apply retroactively on collateral review. Finally, there is no factual basis to support Huddleston's motion.[3] Nothing in the plea agreement, presentence report, sentencing memoranda, judgment, or transcript of the sentencing hearing remotely indicates that Huddleston's conviction carried with it a mandatory minimum sentence that was increased "based upon a sentencing judge's finding." (ECF Nos. 56, 67, 68, 69, 71, 81). Therefore, Huddleston's motion should be summarily dismissed.

---

[3] Both the record and Huddleston confirm that he was convicted of one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2), which carry no mandatory minimum sentence. (See ECF No. 72).

11

### *A. This Court lacks jurisdiction to consider a second § 2255 motion*

The law is well-settled that the district court lacks jurisdiction to consider a second or successive motion filed under 28 U.S.C. § 2255 unless the motion has been certified in advance by a panel of the appropriate circuit court of appeals and contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h); *See also United States v. Winestock,* 340 F.3d 200, 205 (4th Cir. 2003). In this case, Huddleston previously filed a § 2255 motion challenging the same judgment and sentence that are the subject of the instant motion. His first § 2255 motion was denied on the merits, and Huddleston has not obtained certification from the Fourth Circuit to proceed with a second motion. Accordingly, this Court is precluded from considering the motion.

### *B. Huddleston is not entitled to relief under Alleyne v. United States*

In *Alleyne v. United States*, the United States Supreme Court held that any fact that increases the mandatory minimum penalty for an offense must be alleged in the indictment and proven to a jury beyond a reasonable doubt. 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). In order for a habeas petitioner to benefit from the ruling in *Alleyne,* it must be applied retroactively on collateral review. *Alleyne* establishes a new rule of criminal procedure, however, rather than a substantive change in the law. *Harris v. United States*, Case No. 5:10–cv–01045, 2013 WL 4882227, (S.D.W.Va. Sept. 12, 2013). Generally, new rules of criminal procedure do not apply retroactively to cases on collateral review. *Teague v. Lane*, 489 U.S. 288, 303, 109 S.Ct. 1060, 1071, 103 L.Ed.2d

12

334 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.") While there are exceptions to this general rule, those exceptions do not apply in this case and need not be examined.[4]

Courts in this circuit that have addressed the issue have concluded that *Alleyne* does not apply retroactively on collateral review. *See United States v. Stewart*, 540 F.App'x 171 (4th Cir. 2013) ("We note that *Alleyne* has not been made retroactively applicable to cases on collateral review."); s*ee, also, Gibson v. United States*, Case No. 1:11–cv-0024, 2014 WL 204198 (S.D.W.Va. Jan 17, 2014) (Noting the Fourth Circuit's decision in *U.S. v. Stewart* barred this Court from applying *Alleyne* retroactively on collateral review); *Barren v. United States,* Case No. PJM 13-1824, 2014 WL 4299092, at *7 (D.Md. Aug. 29, 2014) (*Alleyne* did not declare a new rule of law that would be retroactive); *Ramseur v. United States,* Case No. 9:11-cv-0075-RLV, 2014 WL 4854642, at *5 (W.D.N.C. Sep. 29, 2014) (*Alleyne* has not been made retroactive on collateral review); *Boyd v. United States,* Case No. 7:08-cr-0003, 2014 WL 1653065, at *2 (W.D.Va. Apr. 24, 2014) (same). Therefore, according to established precedent, *Alleyne* does not provide a basis for the relief requested by Huddleston.

### C. Huddleston's crime carried no mandatory minimum sentence

Lastly, Huddleston was convicted of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), which provides:

---

[4] *See Teague v. Lane*, 489 U.S. 288, 290, 109 S. Ct. 1060, 1064, 103 L. Ed. 2d 334 (1989) (Two exceptions are, "(1) if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe', or (2) if it requires the observance of those "procedures that ... are implicit in the concept of ordered liberty...."") (quoting *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404).

13

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). The penalty for a violation of this statutory provision is found at 18 U.S.C. § 924(a)(2), which states: "Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2). Thus, while a statutory maximum sentence is provided for Huddleston's crime of conviction, there is no applicable statutory minimum sentence. Moreover, it is clear from a review of the plea agreement, sentencing memoranda, presentence report, judgment, and transcript of the sentencing hearing, that the calculation of a mandatory minimum sentence played no role in Huddleston's sentencing. Indeed, there is no mention whatsoever of a mandatory minimum sentence in any of the relevant records, and the sentencing court plainly documented that "no count of conviction carries a mandatory minimum sentence." (ECF No. 72 at 1). As a result, there is no factual basis for Huddleston's motion.

### IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 124) be **DENIED** and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

Movant is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United

States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**: October 10, 2014

_____
Cheryl A. Eifert
United States Magistrate Judge